P. C. THOMPSON & COMPANY, Appellants, v. FRANK R. MASSEY, Respondent.

St. Louis Court of Appeals, March 1, 1898.

1. Sale: TRANSFER OF TITLE. There can be no present sale of goods without a transfer of title from the seller to the buyer. Unless therefore, in the case at bar, the title to all the goods shipped by plaintiffs vested in the Headley Grocer Company when the goods were delivered to it, there was no present or executed contract of sale of the entire subject-matter between the parties.

2. ———: ———: CONSTRUCTION OF WRITTEN CONTRACT. Where according to the terms of a written contract of sale "all goods not sold to be rebilled after expiration of thirty days," the existence of

this clause in the agreement necessarily presupposes that the title to all the goods therein referred to did not pass out of plaintiffs when the memorandum of the agreement was made.

*Appeal from the Greene Circuit Court.*—HON. JAMES T. NEVILLE, Judge.

REVERSED AND REMANDED.

G. M. SEBREE and JOHN S. FARRINGTON for appellant.

The contract between the Headley Grocer Company and plaintiff is not one of sale, but of consignment to sell, and plaintiff is entitled to recover. Peet v. Spencer, 90 Mo. 384; Walker v. Butterick, 105 Mass. 237; Bank v. Benedict & Co., 74 Fed. Rep. 182; Lenz v. Harrison, 36 N. E. Rep. (Ill.) 567; Powder Co. v. Hildebrand, 137 Ind. 462 (37 N. E. Rep. 136); Williams Bros. v. Davis, 47 Iowa, 363; Bayless v. Davis, 47 Iowa, 340; Cordage Co. v. Sims, 62 N. W. Rep. (Neb.) 514; Tiedeman on Sales, sec. 8; Benjamin on Sales (See American note: Sale Distinguished from Consignment) [4 Ed.], p. 8; Audenried v. Bettesley, 8 Allen, 302. Even if this contract is held to be a contract of sale, it is a conditional sale, and, as the deed of trust secured antecedent debts, the trustee holds the property subject to all the equities existing between the plaintiff and the Headley Grocer Company. Wine Co. v. Rinehart, 42 Mo. App. 171; Dymock v. R. R., 54 Mo. App. 407; Watson v. Wolley & Co., 56 Mo. App. 145; Strauss & Co. v. Hirsch & Co., 63 Mo. App. 108; Dry Goods Co. v. Jacobs, 66 Mo. App. 362.

GOODE & CRAVENS and MASSEY & TATLOW for respondent.

Under the settled law of this state the transaction between the Headley Grocer Company and the plaintiff

constitutes an ordinary sale and delivery of goods, and not a consignment of goods. The only things that even apparently distinguishes the transaction from an ordinary sale is that by the terms of this agreement or understanding the Headley Grocer Company was not bound to pay for said goods until after a resale. This does not change the character of the transaction from a sale to an assignment of the goods; for, as said by our supreme court, "the time in which the purchase money is to be paid, whether in so many days or months, or upon the happening of some contingent event as a resale, does not affect the character of the transaction as a sale." Blow v. Spear, 43 Mo. 496; McArthur v. Wilder, 3 Barb. 66; Ex parte White L. R., 6 Ch. App. Cas. 397; Granite Roofing Co. v. Casseler, 82 Mich. 466; Braum v. Keeley, 146 Pa. St. 519; 21 Am. and Eng. Ency. of Law, 520; Bicking v. Stevens, 69 Mo. App. 168.

BOND, J.—Plaintiffs, who are soap dealers living in Philadelphia, through their general agent, sought to sell their wares to the Headley Grocer Company, a business corporation, located at Springfield, Missouri. STATEMENT.    The goods in question were new in that market, and the president of the Headley Grocer Company refused to buy outright upon the proposal of plaintiff, but agreed to take certain of their goods upon the terms expressed in the following memorandum:

"December 30.        P. C. Thompson & Co.:

5 cases Quaker soap lye, $3.00 per case.
20 cases Old Country lye, $3.00 per case.
20 cases Hoe Cake soap, $2.60 per case net.
50 cases brown soap, $2.25 per case net.

"Guarantee sale. Jobber's discount on lye, 35 cents a box. All goods not sold to be rebilled after

expiration of sixty days.   To work trade for Headley
Grocer Company, January 18.

"G. W. FOSTER, General Agent."

In explanation of the above agreement it was
shown by the parties thereto that plaintiffs' guarantee
of sale relieved the Headley Grocer Company from all
responsibility for any portion of the goods which it did
not or could not sell in its territory, and that the pro-
vision for rebilling the goods meant that all goods
delivered under this contract which were not sold in
sixty days should, instead of being removed, be again
billed to the Headley Grocer Company. The testimony
also disclosed that plaintiffs' salesman was to assist the
salesmen of the Headley Grocer Company in making
sales of goods, and that the Headley Grocer Company
were to sell at the prices named in the memorandum,
deriving its profit by receiving thirty-five cents per box
for sales of lye, and deriving its profit as to other articles
by selling at a specified amount, above the prices fixed
in the memorandum.   About sixty days after the date
of this memorandum the Headley Grocer Company
became insolvent, and under a conveyance of its stock
in trade to a trustee for the benefit of its preexisting
creditors, turned over to him certain of the goods
delivered to it by plaintiffs, as aforesaid, of the value
of about $170.   The plaintiffs demanded these goods
of the trustee, and upon his refusal to return them
they instituted this action of replevin, which was sub-
mitted to the court without a jury, and a verdict and
judgment rendered for defendant from which plaintiff
appealed.

The declarations of law given and refused by the
learned trial judge, as well as his findings of facts,
disclose that he deemed the transaction
DECLARATIONS of law: what they disclose. between plaintiffs and the Headley Gro-
cery Company one of present sale of *all*

the goods shipped under the memorandum above set out. A regard for the terms of the instrument in the light of the undisputed explanatory evidence, will disclose that the theory of the trial court was a misconception of the law applicable to the facts in this record. There can be no present sale of goods without a transfer of title from the seller to the buyer.

Unless, therefore, the title to all the goods shipped by plaintiffs vested in the Headley Grocer Company when the goods were delivered to it, there was no present or executed contract of sale of the entire subject-matter between the parties.

SALE of goods in presenti.

1 Benjamin on Sales, sec. 1; State v. Wingfield, 115 Mo. loc. cit. 436. This could not have happened under the stipulations of the contract in question.

Indeed it is contradicted by the express language of the memorandum relied on by respondent to show a sale *in presenti*. According to the terms of this instrument "all goods not sold to be rebilled after expiration of thirty days." The existence of this clause in the agreement necessarily presupposes that the title to all the goods therein referred to, did not pass out of plaintiffs when the memorandum of their agreement with the Headley Grocer Company was made. For if that operated to transfer the title to the entire goods which had been delivered thereunder, it would be absurd to provide for a future billing (or sale) of goods which already belonged to the buyer, and to which the seller had already parted with title. This conclusion can not be avoided, except by a construction which would expunge the clause in question from the written agreement. No law of construction will warrant the arbitrary excision of a stipulation congruous with all the parts of the written agreement in which it is contained and expressive of the intent of the parties. In

the memorandum or contract under review there is no repugnancy in any of its provisions, if the terms used are given their ordinary and natural meaning. As one of its clauses expressly provided for the rebilling (or resale, if the first billing was a sale) of whatever goods are undisposed of at the end of sixty days, we are compelled to hold that as to such goods there was no present and complete transfer of the title at the time the contract was originally made. As the goods in dispute belonged to that class, the only remaining question is whether or not the mortgage to defendant by the Headley Grocer Company gave him any title to the property, as against the plaintiffs in this action? This question can only be answered in the negative. The defendant as the trustee for the benefit of its antecedent creditors acquired no higher title to the property conveyed to him than was possessed by his grantor, and as the record shows that the goods in question had remained in possession of the Headley Grocer Company for more than sixty days and were never rebilled to it, no title to them was vested in it, according to the memorandum or contract between it and the plaintiffs. Jacobi v. Jacobi, 101 Mo. 507; Lowen v. Forsee, 137 Mo. loc. cit. 41–43; Russell v. Rutherford, 58 Mo. App. 553; Napa Valley Wine Co. v. Rinehart, 42 Mo. App. loc. cit. 180; Dry Goods Co. v. Jacobs, 66 Mo. App. 362; Bank v. Bates, 120 U. S. 556–557–565; 2 Pomeroy's Equity, 567. There is nothing in the case of Bicking v. Stevens, 69 Mo. App. 168, cited by the learned counsel for respondent which militates against this view. The contract in that case contained no clause of exclusion of any portion of the subject-matter of the consignment, from the operation of its terms. The contract in the case at bar contains an express exclusion of such goods as are not sold within sixty days, from the operation of its terms. Again,

in the case cited the evidence tended to show that the consignee of the goods was empowered to sell *ad libitum* as to prices, credit, etc. In the case at bar the testimony of Headley discloses that he was governed entirely by the prices fixed by the plaintiffs.

The result is that the judgment in this case must be reversed and the cause remanded, to be tried in conformity with the views herein expressed. All concur.

## ON MOTION FOR REHEARING.

BOND, J.—In his brief and argument in support of the motion for rehearing the mover concedes that he is *not* an innocent purchaser for value of the goods replevied by plaintiffs. In other words, that his title to the goods is that of trustee in an instrument made by the grantor to secure certain preexisting creditors, *and for no other consideration.*

He, however, claims first, that his grantor was a conditional vendee of the mortgaged goods under sale by plaintiffs, and secondly, that this sale was invalid as to him for want of registration under section 5178 of the Revised Statutes. The first assumption was shown to be untenable in the opinion in this case. There was no sale, conditional or otherwise of the particular goods in dispute under the law applicable to the facts in this record. This suffices for the overruling of the motion for rehearing, without further discussion, but we go further. Even if there had been a conditional sale, the mover is wholly mistaken in assuming it to be invalid as to him for want of registration. The fault in his entire argument is that it fails to distinguish who are "creditors" in the statutory sense. Section 5178 of the revision employs this term twice, and in both cases in the same

REASONS for overruling the motion for rehearing.

sense.  Collins v. Wilhoit, 108 Mo. 451.  The sense
in which it is used is that of creditors, "armed with
legal process," such as an execution or an attachment.
A mere creditor not so armed, but claiming only under
a conveyance made as a security for a preexisting debt
does not belong to the class of "creditors" mentioned
in the statute, and no case in this state can be found
which so holds.  In fact the exact contrary is held in
the argument of our supreme court in the case of Qes-
ter v. Sitlington, 115 Mo. 247.  In that case the evi-
dence showed that certain personal property was sold
upon conditions which were not complied with by the
buyer, whereupon the seller replevied the property
from the possession of the sheriff who held it under at-
tachments, the evidence, however, being a blank as to
anything further "in regard to the attachment suits."
Upon the assumption that the writs of attachment were
valid, the court held that the attaching creditors would
be entitled to the property conditionally sold for want
of a record of the sales as required by section 5178.  But
upon the theory of the case, based on the want of any
evidence showing a rightful seizure of the goods by at-
taching creditors being called to its attention, the court
conceded that the statute requiring due acknowledg-
ment and record of conditional sales to validate them
against creditors, would have no application, thus
clearly recognizing that in the use of the term "credi-
tors" the statute in question meant only such as should
seek to enforce their claims through the machinery of
the law.  The identical question was before the New
York court of appeals in Button v. Rathbone, 126 N.
Y. 187.  The court in construing a similar statute
reached a similar conclusion.  The logic of these decis-
ions is plain.  Under legal process creditors seek to
appropriate their debtor's effects in invitum as to him,
whereas if they claim only under a conveyance from

him, their right to assert a higher title than he possessed depends wholly upon the nature of the consideration given.

If no consideration was given beyond the mere acceptance of a conveyance to secure overdue debts, the creditor could not acquire a higher title under the conveyance to him than the grantor had at the time. The mover concedes that this is the rule governing assignees for all creditors, but insists that it does not apply to a trustee for particular creditors, although the only inducement to the trust deed is the securing past indebtedness. There is no distinction in reason or principle between the two title holders. The only difference in the two conveyances is the defeasance clause in the one which is wanting in the other. The trustee and assignee each derive title from the debtor and get no higher title than he had, for the rule is elementary that one who acquires title by contract with another can acquire no higher rights or interest than belong to the latter, except as an innocent purchaser or by force of the recording acts. In the case at bar the mover confesses (and he could not do otherwise under the authorities cited) that he is not an innocent purchaser, and since it has been demonstrated that he does not belong to the class of ''creditors'' contemplated by the statute requiring the recording of conditional sales, no logical ground is left for his contention that he has a higher right to the goods than his grantor. The motion is overruled. All concur. Judge BIGGS in the result.